# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-484


# CITY OF ALEXANDRIA, ET AL.

# VERSUS

# ALEXANDRIA CIVIL SERVICE COMMISSION


************

## APPEAL FROM THE
## NINTH JUDICIAL DISTRICT COURT
## PARISH OF RAPIDES, NO. 233,453
## HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**W. Alan Pesnell**
**The Pesnell Law Firm**
**Post Office Box 1794**
**Shreveport, Louisiana 71166-1794**
**(318) 226-5577**
**Counsel for Defendant/Appellant:**
    **Alexandria Civil Service Commission**

**Howard N. Nugent, Jr.**
**Nugent Law Firm**
**Post Office Box 1309**
**Alexandria, Louisiana 71309-1309**
**(318) 445-3696**
**Counsel for Defendant/Appellant:**
    **Alexandria Civil Service Commission**

**Thomas D. Davenport, Jr.**
**The Davenport Firm**
**1628 Metro Drive**
**Alexandria, Louisiana  71301**
**(318) 445-9696**
**Counsel for Defendant/Appellant:**
       **Alexandria Civil Service Commission**

**Misty Shannon Antoon**
**Steven Oxenhandler**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, Louisiana  71307**
**(318) 445-6471**
**Counsel for Plaintiffs/Appellees:**
       **City of Alexandria**
       **Mike Marcotte**

**Alainna Renee Mire**
**Assistant City Attorney**
**915 3rd Street**
**Alexandria, Louisiana  71301**
**(318) 449-5015**
**Counsel for Plaintiff/Appellee:**
       **City of Alexandria**

**SULLIVAN, Judge.**

The Alexandria Civil Service Commission (the Commission) appeals a judgment rendered by the Ninth Judicial District Court reversing its decision to reprimand Michael Marcotte (Marcotte) for violating a civil service rule forbidding political activity by classified employees of the City of Alexandria (the City). For the following reasons, we affirm.

## FACTS

The trial court outlined the following facts in its Written Reasons for Judgment, which we adopt as our own:

> This case arises out of a dispute about whether a political candidate for city council resided in the district from which he sought office. Michael Marcotte, an electrical engineer, is the Acting Assistant Director of Utilities for the City of Alexandria (hereinafter, the City). He is classified as a civil servant in his employment with the City. As Acting Assistant Director of Utilities, Marcotte's duties included transmission and distribution, customer complaints, preparing work orders, looking at new developments, dealing with easements, and some litigation. Marcotte's responsibilities also included evaluating city utility customers' bills and comparing them with utility consumption.

> On July 21, 2008, Marcotte was informed that he was going to be served with a subpoena to testify about utility consumption in a home. Marcotte was later served with a subpoena to attend court on July 22, 2008 in the matter of _Charles F. Smith, Jr. vs. Jonathan D. Goins, et al._ The subpoena stated he was compelled to remain in attendance from day to day until discharged and that if Marcotte failed to appear in court as summoned, his failure to appear would be under penalty of law.

> As required by City rules, Marcotte notified the City Attorney Charles Johnson, Chief of Staff Kay Michaels and the Mayor Jacques Roy. After inquiring about whether he could testify as to utility consumption and conduct a house inspection related to utility consumption in the City of Alexandria, all three persons advised Marcotte to attend court and testify.

> Marcotte appeared in court on July 22, 2008 and testified. At the trial, presiding judge, Judge Rae Swent deemed Marcotte qualified to offer testimony on utility consumption and ordered Marcotte to go to the Goins' house to evaluate the appliances. Marcotte complied with Judge

1

Swent's order and completed the evaluation. He returned and testified as to his findings on the utility records. As a result, the Court ruled in favor of Jonathan Goins.

Subsequently, the attorney sharing office space with Jonathan Goins' attorney, Thomas Davenport, filed a citizen's complaint against Marcotte with the Commission pertaining to Marcotte's actions in *Smith v. Goins*, claiming that Marcotte had volunteered or been hired to testify on behalf of Mr. Smith. The complaint also stated that Marcotte accessed "private utility records" of Jonathan Goins and that Marcotte testified for the benefit of Smith.

As a result of the complaint, the Commission investigated the allegations. An investigational interview was called by Pam Saurage, Director of Civil Service, and Howard Nugent, attorney for the Commission, to interview the City Attorney Charles Johnson and Marcotte. Charles Johnson requested a copy of the complaint but was not given a copy. At which time, Mr. Johnson informed Saurage and Nugent that Marcotte engaged in no wrongdoing by accessing the utility records because utility records are public record and that Marcotte testified in his capacity as Assistant Director of Utilities for the City and did not speak [to] or see Mr. Smith until the hearing.

On September 29, 2008, the Commission held a hearing pertaining to the allegations. The members of the Commission admonished Marcotte for not seeking instruction from Pam Saurage. More specifically, Marcotte was admonished for seeking legal instruction from the City legal department before going to Saurage. On November 25, 2008, the Commission held that Marcotte violated Civil Service Rule XIV, 1.7[.]

[The] City of Alexandria and Michael Marcotte appealed the decision of the Alexandria Civil Service Commission.

**PROCEDURAL HISTORY**

Upon receiving the appeal, the trial court set the matter for hearing on February 9, 2009, and issued a briefing schedule. Marcotte and the City were ordered to file a memorandum by January 26, 2009; the Commission was ordered to file a memorandum ten days later, or by February 5, 2009. Three days before the hearing, the Commission fax-filed a pleading entitled "Exceptions and Motion to Strike," along with a "Brief in Support of Exceptions" to the trial court. Marcotte and the City

2

timely filed their memorandum in support of appeal. The hearing took place as scheduled on February 9, 2009. At the start of the hearing, the trial court noted that he had not received the Commission's memorandum until that morning. After some discussion on the record, the trial court ruled that it would not accept the untimely-filed memorandum, but that it would allow the Commission's attorney to participate in the hearing. The trial court then entertained argument on the merits and took the matter under advisement. In extensive Written Reasons for Judgment rendered on February 19, 2009, the trial court denied the Commission's exceptions and motion to strike and reversed the Commission's decision against Marcotte and the City. Written judgment was rendered on March 11, 2009.

The Commission now appeals, assigning four errors. First, it claims that the trial court erred in failing to accept and consider the memorandum filed by the Commission. Second, the Commission contends that the trial court erred in failing to adhere to the appropriate standard of review and in replacing the factual findings of the Commission with its own conclusions. Next, the Commission asserts that the trial court erred in holding that Marcotte and the City were denied due process of law. Finally, the Commission contends that it was denied due process when the trial court abdicated its duty of review and wholly deferred to the position set forth in Marcotte's brief.

## LAW

"State constitutional provisions relative to civil service and [civil service commission] rules are designed to secure adequate protection to career public servants from political discrimination and favoritism. In promoting the merit system, the intent of these laws is to guarantee the security and welfare of public service."

3

*Banks v. New Orleans Aviation Bd.*, 08-65, p. 11 (La.App. 4 Cir. 7/9/08), 989 So.2d 819, 825. Article 10, Section 8(A) of the Louisiana Constitution, governing disciplinary actions as to classified civil servants, provides that "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing."

"The decision of a [civil service] commission shall be subject to review on any question of law or fact . . . ." La.Const. Art. 10, § 12(B). In *Newman v. Department of Fire*, 425 So.2d 753, 754 (La.1983) (citations omitted), the Louisiana Supreme Court stated:

> The appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. The appointing authority . . . must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service. As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission.

## DISCUSSION

In order to evaluate the Commission's assignments of error, we must examine the relevant portions of the trial court's Written Reasons for Judgment.[1] Those reasons provide as follows:

> This Court now turns to the issues on appeal. To decide these issues, the Court must use the standard of review designated by the Louisiana Supreme Court.

---

[1]Because the Commission did not appeal the trial court's denial of its exceptions of no cause of action and no right of action or the trial court's finding that the Commission erred in censuring and admonishing non-civil service members of the City, the portions of the Written Reasons for Judgment addressing those issues have been omitted.

The law provides that in deciding whether to affirm the Commission's factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Bannister v. Department of Streets*, 95-0404, 666 So.2d 641 (La. 1996)[.]

Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. "Arbitrary or capricious" means the absence of a rational basis for the action taken.

Employees with permanent status in the classified state or city service may be disciplined only for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8(A). "Cause" for the dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service.

## 1. Whether a civil servant engaged in "the management or affairs of a political faction or party in any political campaign," by responding to a court-issued subpoena to testify as to facts.

The Alexandria Civil Service Commission reprimanded Mike Marcotte stating that he violated Rule XIV, Section 1.7 of the Civil Service Rules by providing testimony in dispute involving candidates for political office.

Rule XIV, Section 1.7 provides:

No employee in the classified service of the City, and no member of the City Civil Service Commission shall be a member of any national, state, or local committee of a political party, or an officer or member of any factional, political club or organization or a candidate for nomination or election to any public office, or shall make any political speech or public political statement in [sic] behalf of any candidate, faction, or party, as a part of any political campaign, for the nomination or election of public officers, or shall take any part in management or affairs of any political faction or party or in any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official

5

watcher at the polls in any election, and to cast his vote for who he pleases.

Rule I, #45 of the Alexandria Civil Service Commission Rules defines political activity as "an overt act or public effort, other than voting, to support or oppose the election of a candidate for political office or support or oppose a particular party in an election."

In the case at hand, Michael Marcotte was issued a subpoena by the court to appear and testify to facts related to utilities. He was also ordered by the Court to participate in a home inspection. Mr. Marcotte complied with the Court's orders. He testified to the facts that appeared in the utility records. As Assistant Director of Utilities, Marcotte's duties included but were not limited to transmission and distribution, customer complaints, preparing work orders, looking at new developments, dealing with easements, and some litigation. Marcotte's responsibilities also included evaluating city utility customers' bills and comparing them with utility consumption.

It is the determination of this Court that Marcotte was exercising his function as assistant director when he participated in the home inspection and testified to utility consumption in the home. He was not participating in the management or affairs of a political faction, party, or political campaign. He was compelled by the Court to testify to facts related to his job and gave that testimony based on those facts. He did not volunteer to testify nor was he hired by one side to testify. The Alexandria Civil Service Commission erred in censuring and admonishing Mike Marcotte. It was unreasonable to discipline Mike Marcotte for obeying the Court's orders[.] The Commission's decision that Marcotte violated Rule XIV, Section 1.7 for testifying before the Court was arbitrary and capricious, and is therefore overruled.

. . . .

**3. Whether the Alexandria Civil Service Commission, attorney for the Commission, and civil service director denied Mike Marcotte and the City of Alexandria due process.**

The City and Marcotte argue that they were not afforded due process before the hearing at the Commission. The appellants state that they were not given the proper notice of the charges or accusations against them in order to properly prepare a defense. The appellants assert that there was an unexpected, taped investigational interview by the civil service director and the commission's attorney. They were not provided a description of the evidence against Marcotte nor were they provided a copy of the complaint despite request. The appellants also state that Marcotte did not have an opportunity to have a personal attorney present at the interview nor was he given a copy of an

6

exculpatory Motion and Order that justified his actions. This Motion and Order was used at the hearing by the civil service director and the Commission.

Due Process of law is guaranteed by both the United States Constitution and the Louisiana Constitution. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be noticed. The purpose of this requirement is to protect a person's use and possession of property from arbitrary encroachment, to minimize substantially unfair or mistaken deprivation. *Wilson v. The City of New Orleans*, 85-0712, 479 So.2d 891 (La. 1985). The Louisiana Supreme Court has held that notice is required under the Due Process Clause. More specifically, the Court stated "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for an impending hearing." *Id[.]* at 900.

Neither the City nor Marcotte were provided with a copy of the complaint against Marcotte. Therefore, Marcotte was not apprised of the charges against him. He could not prepare for his defense and could not obtain a personal attorney to attend the investigational interview with him. When a copy was provided, it did not contain an exculpatory Motion and Order. Thus, it is the determination of this Court that Marcotte and the City of Alexandria were denied due process as a result.

Moreover, due process requires that the accused be provided with a neutral and impartial referee to impart fairness. The essential guarantee of the Due Process Clause is fundamentally fair procedure for the individual in the resolution of the factual and legal basis for government actions which deprive him of life, liberty or property. Therefore, there must be some type of neutral and detached decision maker, be it judge, hearing officer or agency. This requirement applies to agencies and government hearing officers as well as judges. An impartial decision maker is essential to due process. *Wilson v. The City of New Orleans*, 479 So.2d 891 (La. 1985)[.]

Even if an individual cannot show special prejudice in his particular case, the situation in which an official occupies two inconsistent positions, one partisan and the other judicial, necessarily involves a lack of due process. *Id.* at 902.

The appellants assert that Attorney Howard Nugent participated in the hearing before the Commission both as prosecutor and adjudicator. The appellants assert that Mr. Nugent limited the opening statement of opposing counsel and also limited the testimony of the witness. They assert that the Commission allowed Nugent's behavior, essentially allowing him to testify for the witness as well as ignoring opposing counsel's objections.

7

The Louisiana Supreme Court held "We find the commingling of prosecutorial and adjudicative functions violates both the letter of the Louisiana Administrative Procedure Act and the due process goals it is designed to further. . .The idea of the same person serving as judge and prosecutor is anathema under our notions of due process. Such a scenario is devoid of the appearance of fairness." *In Re Georgia Gulf Corp. v. Bd. of Ethics*, 96-1907, 694 So. 2d 173 (La. 1997)[.]

By allowing Nugent to rule on objections, limit the opening statement of the opposing counsel and the testimony of a witness, the Commission violated due process.

Furthermore, the appellants assert that they were denied due process because Marcotte was not given an explanation of the evidence the Commission used to make its decision, and was not provided all the evidence prior to a determination hearing.

In *Cleveland Bd. of Educ.[v]. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held "The essential requirements of due process . . . are notice and an opportunity to respond. . .The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side to the story." See *Henderson v. Sewerage and Water Bd*, 752 So.2d 252, (La. App. 4 Cir. 12/22/99); *Cannon v. City of Hammond*, 727 So.2d 570 (La. App. 1 Cir 12/28/98).

This Court finds that because Marcotte and the City were not provided with a copy of the complaint and evidence against Marcotte prior to the determination hearing, they were denied due process. According to the law, the Commission was required to submit such complaint as well as any evidence against Marcotte. Additionally, the Commission violated due process when it failed to give any weight to the Court's subpoena and order which Marcotte followed.

**4. Whether the Commission failed to properly indentify [sic] significant conflicts of interests which adversely affected the outcome of the case.**

The appellants contend that the Commission erred in deciding this case because it was tainted with conflicts of interests. The appellants assert that the complainant was entangled with the Commission and Attorney Davenport, the attorney for Goins in Smith v. Goins. The appellants assert that the complainant was a prior Chairman of the Commission. The complainant also shares office space with Mr. Davenport of which he collects rent. The appellants also state that in his complaint, the complainant states his former position as the Chairman

of the Commission. Because of this connection, the Commission gave undue deference to the complaint, not considering the other evidence. The appellants attempted to reveal the conflicts but were blocked by the Chairman of the Commission and Mr. Nugent. This is revealed in the record.

The appellants assert that a conflict of interest exists because Mr. Nugent, in his capacity as attorney for the Commission acted both as prosecutor and judge during the hearing. In *Vega v. Nat'l Life Ins. Services Inc*, 188 F.3d 287, 297 (5th Cir. 1999), the Court held, "The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."

In *In re Georgia Gulf*, the Court found that the Ethics Commission's attorney had a stake in the factual determination of the case. He acted as both prosecutor and judge. The Court held that the general counsel in that case "whose input as general counsel is already heavily weighted in favor of the Ethics Commission crossed into the adjudicatory realm." The Court went on to state "It is patently unfair that a party charged with a violation should feel that he is not only fighting the prosecutor but also the agency that is supposed to independently determine the merit of the charges leveled against him." 694 So.2d 173, 96-1907 (La. 1997)[.]

Based on the law and the evidence at hand, this Court finds that the Commission failed to properly identify conflicts of interests which adversely affected the outcome of this case. The Commission repeatedly allowed its counsel to conduct the hearing and followed his lead. It did not allow the appellants to properly put on their case. The Commission blocked an attempt to reveal conflicts of interest and did not take into account that Marcotte was compelled by the Court to testify and participate in a home inspection of utility consumption. This Court further finds that conflicts of interest existed to impede and/or adversely affect the outcome of this case. The complainant in this case was a former Chairman of the Commission and shared an office building with and collected rent from the attorney in the underlying suit. The Commission relied on and allowed its attorney Howard Nugent to take on its role as adjudicator as well as the role of prosecutor, thus creating an even greater appearance of impropriety.

Based on the above reasons, this Court finds that the Alexandria Civil Service Commission denied the City of Alexandria and Mike Marcotte due process of law. This Court further finds that the Alexandria Civil Service Commission erred in its decision that Mike Marcotte engaged in political activity when he complied with a court issued subpoena and court order. The Alexandria Civil Service

9

Commission also erred in admonishing the City of Alexandria administration.

## ANALYSIS

### *Did the trial court err in failing to accept the Commission's memorandum?*

Counsel for the Commission claimed to have been too busy to file his memorandum because of another trial that took place on February 6, 2009. He admitted to having miscalculated the date when his memorandum was due. While the Commission complains that the trial court erred in failing to accept and consider its untimely-filed memorandum, no jurisprudence is cited in support of its argument.

At the hearing, the trial court explained that, in preparation for the hearing, it had gone out of its way to ascertain whether the Commission had filed a memorandum. It noted the disadvantage of not having the opportunity to know in advance the nature of the Commission's opposition and to research the position advanced in the memorandum. Marcotte and the City objected to the trial court's consideration of the Commission's memorandum, arguing that they had not received a copy of the memorandum until the morning of the hearing. They complained that the untimely-filed memorandum contained documents not included in the record.

The Commission was able to file exceptions and a motion to strike, along with a memorandum in support, three days before the trial. Thus, its argument that it was too busy to timely file a memorandum in opposition to the appeal by Marcotte and the City is unpersuasive. Given the totality of the circumstances and the fact that the Commission was allowed to participate in oral argument, we cannot say that the trial court abused its discretion in refusing to accept and consider the Commission's untimely-filed memorandum. *See Higginbotham v. Rapides Found.*, 07-538 (La.App.

3 Cir. 10/31/07), 968 So.2d 1226. The Commission's first assignment of error lacks merit.

***Did the trial court err by failing to adhere to the proper standard of review and by replacing the factual findings of the Commission with its own conclusions?***

The Commission asserts that the trial court failed to follow the correct standard of review and that it improperly replaced the factual findings of the Commission with its own factual conclusions. The position of the Commission is completely unfounded. The trial court thoroughly discussed the appropriate standard of review in its written reasons. The trial court concluded that the Commission's factual finding that Marcotte had violated Civil Service Rule XIV, Section 1.7 was arbitrary and capricious.

We have reviewed the record in its entirety, including the transcript of the Commission hearing, and we find that the trial court's conclusion is supported by the overwhelming majority of the evidence. Once the trial court determined that the Commission's findings of fact were clearly wrong or manifestly erroneous, it was free to disregard those factual findings, to make its own factual findings, and to reverse the disciplinary action taken against Marcotte by the Commission if the facts did not support that disciplinary action. We agree with the trial court's determination that Marcotte was simply doing his job when he attended the home inspection and testified in court, pursuant to a valid subpoena and order to permit inspection, in the *Smith v. Goins* matter. We are convinced that the trial court properly applied the standard of review to the matter before it. This assignment of error has no merit.

***Did the trial court err in holding that Marcotte and the City were denied due process of law?***

Initially, we note that the trial court's recitation of the law regarding due process was accurate and complete. The trial court concluded that Marcotte was not given a copy of the complaint against him prior to the investigational interview conducted by Pam Saurage, the Director of Civil Service, and that, as a result, he was not aware of the charges against him, and he did not have a personal attorney accompany him to the interview. The trial court also found that Marcotte was not given a copy of the exculpatory motion and order directing him to participate in an inspection of Goins' house. Finally, the trial court determined that the Commission failed to properly identify several conflicts of interest which adversely affected the outcome of this case. The trial court concluded that each of the aforementioned failings by the Commission resulted in violations of the due process owed to Marcotte by the Commission.

The Commission argues that even if Marcotte received less than the full due process owed him at the investigational interview, any defects were immaterial or were subsequently cured at the full-blown hearing before the Commission.

Our review of the record reveals ample support for the conclusions reached by the trial court with regard to the due process violations suffered by Marcotte as a result of the actions of the Commission and its attorney, Nugent. Contrary to the position of the Commission, the due process defects present at the time of Marcotte's investigational interview were not cured at the subsequent hearing before the Commission. In fact, the due process violations continued and were exacerbated by additional due process violations. In addition to the violations noted by the trial court, we further note that neither Marcotte nor the City was given a copy of a seven-

12

page report written by Ms. Saurage after she conducted the investigational interview. The trial court did not err in holding that Marcotte and the City were denied due process of law.

***Did the trial court deny due process to the Commission by abdicating its duty of review and wholly deferring the position set forth in Marcotte's memorandum?***

The Commission contends that the trial court "merely adopted the brief of Marcotte as its opinion" instead of properly reviewing the record before it on appeal. Marcotte and the City strongly disagree, noting that "it is the very function of the court to fairly choose one side over another in litigation."

We find the Commission's argument in this regard to be totally devoid of merit. The trial court's written reasons are by no means a parroting of the memorandum filed by the City and Marcotte. Instead, those reasons indicate that the trial court was well-versed in the law and that it even-handedly applied that law to the facts before it. "Courts may adopt those findings submitted by one party and reject those of the other." *Burkett v. Crescent City Connection Marine Div.*, 98-1237, p. 10 (La.App. 4 Cir. 2/10/99), 730 So.2d 479, 484. The trial court did a commendable job in reviewing the matter before it, and it clearly did not violate the due process rights of the Commission in the performance of its review.

## DECREE

For the forgoing reasons, the judgment of the Ninth Judicial District Court is affirmed in its entirety. All costs of this appeal are assessed against the Alexandria Civil Service Commission.

**AFFIRMED.**

13